FILED 14 2025 am10:40 USDC - FLMD - ORL

1
2
3
4

HARRY PERSAUD
*c/o Harry Persaud*
*5666 SW 59th Street*
Ocala, Florida [34474]
Phone Number (407)-474-3800
Email: harcoucc@gmail.com

5   **UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

6

| | |
|---|---|
| 7   HARRY PERSAUD<br>      c/o Harry Persaud | ) Case No.: |
| 8 | ) |
|        Plaintiff(s), | ) **PLAINTIFF'S ORIGINAL** |
| 9 | ) **COMPLAINT FOR:** |
|    v. | ) |
| 10 | ) |
|    *BANK OF NEW YORK MELLON and/or its* | ) **I.  FRAUD IN THE FACTUM** |
| 11   *successors, individually, and in their official* | ) **II. MORTGAGE-BACKED** |
|    *capacity, an ens legis being used to conceal* | )       **SECURITIES** |
| 12   *fraud,* | ) **III. IMPROPER ASSIGNMENT** |
| | )       **OF NOTE *inter alia*** |
| 13 | ) **IV. CHAIN OF TITLE** |
|        Defendant(s). | ) **V. MERS; MORTGAGE ELECTRONIC** |
| 14 | )       **SYSTEM** |
| 15 | ) |
| 16 | ) |
| | ) |
| 17 | ) **Jury Trial Demanded** |
| 18 | ) **Reserve the Right to Amend**<br>   **Requesting Hearing In Equity** |
| 19 | |
| 20 | **Judge:**<br>**Dept:** |
|    | **Action Filed:** |
| 21 | **Trial Date:** |
| 22 | |

23   **COMPLAINT**

24   **COMES NOW,** Harry Persaud a single man (hereinafter "Plaintiff") and or Persaud

25   proceeding in *propria persona, (because the matrimonial party is deceased,)* and files his

26   original civil lawsuit § 1983 aforementioned for the real property and description located at

27   8024 Firenze Blvd, Orlando, Florida [32836]. "LOT 5, BLOCK D, VIZCAYA PHASE ONE,

28   ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 45, PAGE(S) 29-34,

OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA.   The Magistrate and or Chancellor of this Court only wanting the facts pertaining to this matter. Plaintiff will omit useless case law, conclusions coupled with naked assertions to support.

Plaintiffs hereby allege as follows:

## INTRODUCTION

This action is a civil action filed by Harry Persaud, a single, (hereinafter "Plaintiff") against BANK OF NEW YORK MELLON et al (hereinafter "Defendants",) for misconduct related to their origination and servicing of Plaintiffs' single family residential mortgage.

The Plaintiffs demands that their *pro se* be recognized and treated by this Chancery Court as the United States Supreme Court, US District Courts, and Florida Supreme Court have held such status be recognized and treated. It is, by now, axiomatic that district courts have a special responsibility to construe *pro se* complaints liberally and to allow ample opportunity for amending the complaint when it appears that by so doing the *pro se* litigant would be able to state a meritorious claim. *See, e.g., Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981) (noting "well-established requirement that pro se pleadings be held to less stringent standards than those prepared by counsel"); *Munz v. Parr*, 758 F.2d 1254, 1258 (8th Cir. 1985) (*pro se* complaint is not frivolous unless it is "beyond doubt that petitioner can prove no set of facts in support of his claim which would entitle him to relief"); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) ("*pro se* litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment"); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (less stringent standards for *pro se* complaint).

Not only is the district court to view the *pro se* complaint with an understanding eye, but, while the court is not to become an advocate, it is incumbent on it to take appropriate measures to permit the adjudication of *pro se* claims on the merits, rather than to order their dismissal on technical grounds. Indeed, it is the "well-established duty of the trial court

HARRY PERSAUD'S ORIGINAL COMPLAINT

1   to ensure that the claims of a *pro se* litigants are given a fair and meaningful consideration."
2   *Palmer v. City of Decatur*, 814 F.2d 426, 428-29 (7th Cir. 1987) (citations omitted).

3       As described in the allegations below, Defendants' misconduct resulted in the
4   issuance of an improper mortgage, premature and the inevitable unauthorized foreclosure,
5   violation of Plaintiffs' homeowners rights and protections, the use of false and deceptive
6   affidavits and other documents. Each of the allegations regarding Defendants contained
7   herein applies to instances in which the defendant engaged in the conduct alleged.

8   **THE PARTIES**

9       This action concerns certain real property, of which, Plaintiff, Harry Persaud, a single
10  man, residing in the State of Florida, County of Orange, and *inter alia*, are the purchasers of
11  certain real property located at **8024 Firenze Blvd., Orlando, Florida [32836] supra.**

12      Defendants, BANK OF NEW YORK MELLON (hereinafter NEW YORK MELLON
13  and or Defendants) is a diversified financial services company. It is a "Global" Delaware
14  Trust Corporation, headquartered at 240 Greenwich St, New York, NY 10286. Defendant
15  Assoc.   The Defendant identified in this paragraph are referred to here as "BANK OF NEW
16  YORK MELLON", and are lenders and servicers, which regularly engage in business in the
17  State of Florida and who regularly provide mortgage loans and related services to residents
18  in the State of Florida.

19  **JURISDICTION AND VENUE**

20      This Chancery Court has subject matter jurisdiction pursuant to 28 U.S.C § 1331
21  because the action arises under the laws of the United States, and pursuant to 28 U.S.C §
22  1332(a)(1) as there exists diversity of all parties and the amount in controversy exceeds
23  $75,000. The Defendants all have sufficient contacts with California as they service and
24  foreclose on numerous loans in the state. Venue is proper in this District pursuant to 28
25  U.S.C. §§ 1391(b)(1) and (2) and 31 U.S.C § 3732(a). This Honorable court maintains venue
26  and subject matter jurisdiction minus the *Rooker-Feldman doctrine*. *"The Rooker-Feldman*
27  *doctrine merely recognizes that 28 U.S.C. § 1331[, which provides that federal "district*
28

1 *courts shall have original jurisdiction of all civil actions arising under the Constitution,*
2 *laws, or treaties of the United States,"] is a grant of original jurisdiction, and does not*
3 *authorize district courts to exercise appellate jurisdiction over state-court judgments,*
4 *which Congress has reserved to [the Supreme] Court, see [28 U.S.C.] § 1257(a)." Verizon*
5 *Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n. 3, 122 S.Ct. 1753, 152 L.Ed.2d
6 871 (2002) (holding that the *Rooker-Feldman doctrine* does not apply to a suit seeking
7 review of state agency action).

8                                    **RULE OF LAW**

9          Whereby this cause, being a complaint in exclusive equity jurisdiction, (as it directly
10 involves the property/estate/securities of the plaintiffs), cites the rule of law as follows
11 upon: "Equity having power and the court having jurisdiction, decrees can conform to the
12 exigencies of the suits and award appropriate relief under the complainant's general
13 prayer." *United States v. Cooper*, 217 F. 846, 847 (D. Mont. 1914). "While a court of equity,
14 having once obtained jurisdiction of a cause, will retain it for all purposes and administer
15 complete relief, yet in order to authorize relief which can be obtained in a suit at law, there
16 must be some substantial ground of equitable jurisdiction both alleged and proven;
17 otherwise a court of equity will not retain jurisdiction and grant a purely legal remedy".
18 *Gentry-Futch Company v. Gentry*, 90 Fla. 595, 106 So. 473; *See also* 10 R. C. L. 370 to
19 372."The suit is brought for special relief, and the judgment required to be entered is such as
20 a court exercising jurisdiction in equity alone could render." *Shoshone Min. Co. v. Rutter*, 87
21 F. 801, 804 (9th Cir. 1898). "[W]here . . . the equitable jurisdiction of the court has properly
22 been invoked . . . the court has the power to decide all relevant matters in dispute and to
23 award complete relief even though the decree includes that which might be conferred by a
24 court of law." *Porter v. Warner Holding Co.*, 328 U.S. 395, 399, 66 S.Ct. 1086, 1090, 90
25 L.Ed. 1332 (1946).

## BACKGROUND FACTS

Plaintiffs files their original complaint so that his burden of Proof and Stating a Claim is met upon which relief can be granted pursuant to Fed.R.Civ.P. 8(e). Plaintiff conducted extensive research with the aid of private Forensic Audit as an Witness of Fact in support of this complaint. Plaintiff presents a multi-pronged complaint consisting primarily of contract breach and gross negligence in regard to Chain of Title and forgery. Plaintiffs states their claim as follows:

### I. FIRST CAUSE OF ACTION
### FRAUD IN THE FACTUM per UCC § 3-305(a)(1)(iii)
### (Against BANK OF NEW YORK MELLON)

The beneficial interest (ownership) of the Persaud's Deed of Trust has been recorded in the Official Records of Orange County Recorder's Officer as being in the name of Country Wide Home Loan, the Original Lender of the loan dated August 2, 2005. However, it is clear that Country Wide sold all ownership interest in the Persaud Intangible Obligation (the debt) shortly after the July 25, 2005 signing. On March 26, 2024, the Harry and Versa Persaud payment stream (The Debt) was identified in the Alternative Loan Trust 2005-37T1 ("CWALT 2005-37T1 Trust") This is considered a Special Purpose Vehicle (SPV) which was created for the purpose of issuing mortgage-backed securities.

The information contained herein was derived by and through professional services, and by reviewing the Loan Level Data obtained from the GTC Investor Online Portal on March 26, 2024, by independent third-party securitization and banking expert William McCaffrey (Housing Mortgage Consultants Inc.), who specializes in locating Residential Mortgage-Backed Securities, (RMBS), and VA, FHA and GSE loans.

Per the Prospectus Supplement (To Prospectus dated January 25, 2005) for the Alternative Loan Trust 2005-37T1 Trust, the transaction participants of the Alternative Loan Trust 2005-37T1 are: (1) Sponsor/Seller, Countrywide Home Loans Inc. (2) The Depositor: CWALT, Inc., - is a limited purpose finance subsidiary of Countrywide Financial Corporation. (3) Issuing Entity: The Alternative Loan Trust 2005-37T1, a common-law trust (4) Trustee: The Bank of New York, a banking corporation organized under the laws of the State of New York. The Trust closed on or

HARRY PERSAUD'S ORIGINAL COMPLAINT

about July 28, 2005 (see, PROSPECTUS at the SECURITY EXCHANGE COMMISSION'S ("SEC") websitehttps://www.sec.gov/Archives/edgar/data/1269518/000095012905007407/v10832e32e424b5.txt (Annexed Exhibit Omitted 1-5 pages of the PROSPECTUS Supplement for the convenience of the court).

Plaintiff extensive research concluded a securitization audit and an examination of the documents presented for a particular loan and security transaction and comparing and analyzing them with other available information for the purpose of determining if it has been securitized, and if it was, of identifying the securitizing entity.

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein. Plaintiffs assert that all debts should be paid and in no way are the claims herein an attempt to avoid repayment of a valid debt claim. Plaintiffs allege here that Defendants have violated Washington law per RCW 19.40.051, more specifically referred to as fraud in the factum (fraud in the execution), i.e., "the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents." *Langley v. FDIC*, 484 U.S. at 93-94. "[Fraud in the factum] induces a party to believe the nature of his act is something entirely different than it actually is. *See 12 Williston on Contracts* § 1488, at 332 (3d ed. 1970). "Fraud in the execution" arises when a party executes an agreement "with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms." Uniform Commercial Code § 3-305(2)(c); see Restatement (Second) of Contracts § 163 (1981).

A party who alleges [fraud] has the burden of proving each of the elements of [fraud] by clear, cogent, and convincing evidence per *6A Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI* 160.02 (7th ed.). Proof by clear, cogent, and convincing evidence means that the element must be proved by evidence that carries greater weight and is more convincing than a preponderance of evidence. Clear, cogent, and convincing evidence exists when occurrence of the element has been shown by the evidence to be highly probable. However, it does not

mean that the element must be proved by evidence that is convincing beyond a reasonable doubt. *Ibid.*

(1)BANK OF NEW YORK MELLON purported to have given consideration for the Plaintiffs' accommodation negotiable instrument in the form of real money purportedly executing an underlying obligation (indebtedness) between the parties to the contract. BANK OF NEW YORK MELLON concealed in the presentation for the terms of the Deed of trust contract(s) a cross acceptance of which the Sureties, the issuers of the negotiable instrument, would accept ownership of the real property collateral for executing an accommodation negotiable instrument on behalf of the COUNTRYWIDE HOME LOAN, the accommodated party. BANK OF NEW YORK MELLON used Sureties' accommodation parties promise to put the accommodated into funds as surety and a personal property security interest in the sureties' pledged security instrument as collateral for the purpose of negotiating a personal property (payment intangible) transaction between the Defendant, BANK OF NEW YORK MELLON and COUNTRYWIDE HOME LOAN, and Plaintiffs for a service release premium without recourse to be received through a table funded transaction at the closing of the purported loan.

(2) Defendant concealed a third party Securitizer as well as the terms of the Securitization Agreements, including, *inter alia*:

a) Financial Incentives paid;

b) existence of Credit Enhancement Agreements, and

c) existence of Acquisition Provisions.

(3) By concealing this securitization, the true character of the purported loan in this way had a materially negative effect on the Plaintiffs that was known by Defendants but not disclosed.

(4)BANK OF NEW YORK MELLON knew or should have known that there was no meeting of the minds between the issuer Surety and the purported depository bank or lender, the

HARRY PERSAUD'S ORIGINAL COMPLAINT

Defendant, regarding the true character of the purported loan and that most importantly it created no underlying obligation between the parties to contract.

(5)BANK OF NEW YORK MELLON knew or should have known that had the truth been disclosed, Sureties would not have pledged a security agreement to the Defendant, the accommodated party for the purpose of an alternative means of collection.

(6)BANK OF NEW YORK MELLON intended to induce Sureties based on these material misrepresentations and improper disclosures.

(7) Plaintiffs and Sureties reasonable reliance upon the misrepresentations was detrimental. But for failure to disclose the true and material terms of the transaction, Sureties could have alerted to issues of concern. Plaintiffs and Sureties would have known of Defendant's true intentions and profits from the proposed purported loan. Plaintiff and Sureties would have known that the actions Defendant would have an adverse effect on the value of Plaintiff's and Sureties home by clouding the title.

(8) Defendant's failure to disclose the material terms of the transaction induced Sureties to enter into the purported loan and accept the services as alleged herein.

(9) Defendants were aware of the misrepresentations and profited from them.

(10) As a direct and proximate result of the misrepresentations and concealment Plaintiff has been damaged in an amount to be proven at trail, including but not limited to costs of Loan, damage to Plaintiff's financial security, emotional distress, and Plaintiffs incurred costs.

(11) Defendant is guilty of malice, fraud and/or oppression. Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure the Plaintiff. As such, Plaintiff is entitled to recover, in addition to actual damages, punitive damages to deter them from engaging in future misconduct.

(12)BANK OF NEW YORK MELLON perpetuated the fraud and claimed the ability to service the "loan" originated by COUNTRYWIDE HOME LOAN.

HARRY PERSAUD'S ORIGINAL COMPLAINT

Under Florida law, the nine elements of fraud are (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of it falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon the representation; and (9) damages suffered by the plaintiff. *Stiley v. Block*, 130 Wn.2d 486, 505, 925 P.2d 194 (1996). A negligent misrepresentation occurs when one who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. *Micro Enhancement Int'l, Inc. v. Coopers Lybrand, L.L.P.*, 110 Wn. App. 412, 436, 40 P.3d 1206 (2002); Restatement (Second) of Torts § 552(1) (1977).

Plaintiffs assert that such fraud "render[s] the instrument entirely void, thus leaving no right, title or interest that could be diminished or defeated." *Ibid Langley*. (citations omitted). Plaintiffs have conducted audits and have concluded that the Defendants never "loaned" the Plaintiffs anything, yet through a clever book-entry swap, simply loaned (returned) the value of the note created by the Plaintiffs back as a loan that was to be repaid. Defendants are required to adhere to Generally Accepted Accounting Principles (GAAP). GAAP follows an accounting convention that lies at the heart of the double-entry bookkeeping system called the Matching Principle. The principle works as follows:

*When a bank accepts bullion, coin, currency, checks, drafts, promissory notes, or any other similar instruments (hereinafter "instruments") from customers and deposits or records the instruments as assets, it must record offsetting liabilities that match the assets that it accepted from customers. The liabilities represent the amounts that the bank owes the customers, funds accepted from customers. In a fractional reserve banking system like the United States banking system, most of the funds advanced to borrowers (assets of the*

HARRY PERSAUD'S ORIGINAL COMPLAINT

*banks) <u>are created by the banks themselves</u> and are not mere transferred from one set of depositors to another set of borrowers.*

According to GAAP and Federal Reserve Publications, two loans were exchanged. The Plaintiff and BANK OF NEW YORK MELLON exchanged reciprocal credits involving money of account and not money of exchange; no lawful money was or probably ever would be disbursed by either side in the covered transaction. The loan from the Plaintiffs to the COUNTRYWIDE HOME LOAN /BANK OF NEW YORK MELLON is the deposit of the promissory note at the July 28, 2005 date of signing in the amount of $1,405,625.00. If COUNTRYWIDE HOME LOAN, deposited the note, per 12 U.S.C. 1813, the Defendants were required to give a deposit receipt. GAAP requires that a bank, or financial institution in its regular course of business "match" a new liability with the Plaintiffs' name on it showing that the bank owes the Plaintiffs for the deposit they accepted from the Plaintiffs just as, in the regular course of business, when deposits of cash into a checking account are made.

Plaintiffs concede that while it is true that the mere fact that a company's financial reporting is inaccurate does not establish scienter, see *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1021 (5th Cir. 1996); *In re General Electric Securities Lit.*, No. 94-C-4024, 1995 WL 590639, at *4, (S.D.N.Y. Oct.4, 1995), aff'd, *Chill v. General Electric Co.*, 101 F.3d 263 (2d Cir. 1996), the magnitude of reporting errors may lend weight to allegations of recklessness where Defendants were in a position to detect them. It is sufficiently pled if the complaint "afford[s] a basis for believing that plaintiffs could prove scienter." DiLeo, 901 F.2d at 629. Unlike the factual circumstances constituting the fraud, a defendant's fraudulent intent may be averred generally. Fed.R.Civ.P. 9(b); Reshal, 754 F.Supp. at 1235. The Federal Reserves Publications shed more light on the scheme initiated by Caliber and perpetuated by Shellpoint, it states:

*"Of course, they [BANKS] do not really pay out loans from the money they receive as deposits. If they did this, no additional money would be created. What they do when they make loans is to accept promissory notes in exchange for credits to the borrowers' transaction*

*accounts. Loans (assets) and deposits (liabilities) both rise... Reserves are unchanged by the loan transactions. But the deposit credits constitute new additions to the total deposits of the banking system." "[T]he bank creates new money as loans are granted; The bank records the promissory note as a bank asset which is offset by a new bank liability called the borrower's transaction account (which is commonly called a checking account).*

Federal Bank of Chicago, Modern Money Mechanics pg.5, Anne Marie L. Gonczy et al. eds., (1994)(emphasis added). This publication goes on to say, "Any deposit received is new money, regardless of its ultimate source." *Id.* p.7. The publication from the Federal Reserve of Texas reiterates this point by stating, "Banks actually create money when they lend it...Most of a bank's loans are made to its own customers and are deposited in their checking accounts."

***Black's Law Dictionary***, Tenth Edition explains a deposit as follows:

deposit, n. (17c) **1.**The act of giving money or other property to another who promises to preserve it or to use it and return it in kind; esp. the act of placing money in a bank for safety and convenience. - Also termed (when made at a bank) bank deposit. **2.** The money or property so given.

**BLACK'S LAW DICTIONARY**, 533 (Bryan A. Garner et al. eds., 10th ed.2014) Under Title 12 U.S.C 1913(L)(1) when Plaintiffs deposited their note, it became a cash item. It became the equivalent of cash. The Plaintiffs allege they are the creditor on the payables side of the ledger for Defendants. By depositing the Note (an asset of the originators/ makers of the note) by the Defendant, the loan, which had not yet been advanced to mortgagors by the mortgage company, was paid therefore there cannot be a "holder-in-due- course" of the Note if it has already been paid. To be a "holder-in-due- course" of the note, the note must be held by the lender until the note is paid off by the borrower and returned to the borrower. Depositing the note, in effect, cancels the note because the lender has just been paid (cash receipts for the deposit) and no "receipt" for the deposit was ever given to the borrower. The Defendants must follow GAAP, as do all banks, and show a corresponding "liability" for the "asset" (note) they deposited. That liability is money the Defendants OWE to Plaintiffs for

- 11 -

HARRY PERSAUD'S ORIGINAL COMPLAINT

their asset that was deposited. Defendants are unable to loan funds from other depositors per Federal Reserve Publications, (*Modern Money Mechanics, Supra* at para 6, pg. 5), this much is clear. Money, (or its equivalent) must first be deposited in order to be loaned. This was not relayed to the Plaintiffs in any cognizable manner.

Although allegations of GAAP violations, standing alone, are insufficient to raise a strong inference of scienter, GAAP violations may support the inference when coupled with additional circumstances, such as the magnitude of the accounting error, a defendant's prior notice of the error, or a defendant's responsibility for calculating and disseminating financial information. *Takara Trust v. Molex, Inc.*, 429 F. Supp. 2d 960, 980 (N.D. Ill. 2006) (citing *Stavros v. Exelon Corp.*, 266 F. Supp. 2d 833, 850 (N.D. Ill. 2003)). This Chancery Court may additionally consider the "identification of the specific transactions alleged to have violated GAAP and the amount of detail provided in explaining those transactions." *Takara Trust*, 429 F. Supp. 2d at 980-81 (citing *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1104 (10th Cir. 2003)).

The Defendants violated Banking Law pertaining to GAAP as is required of all FDIC insured institutions. See 12 U.S.C 1831n (2)(A). The actions alleged herein are at best deceptive and at worse fraud in its highest form. Plaintiffs believe borrowers should repay all lenders. Defendants cannot violate the law, contracts or GAAP, and the use of deception renders this contact *ultra vires* - void.

Excusable ignorance of the contents of the writing signed by the Plaintiffs is clear. Plaintiffs assert that adequate assurance of due performance that the defendants purchased the note from the Plaintiffs and did not deposit the note was not given. The defrauded party may recover the property from the bona fide purchaser or avoid honoring the negotiable instrument held by the holder in due course only if the initial transaction was "void" rather than merely "voidable." *See J. Calamari J. Perillo, Contracts* § 9-22, at 293; *J. White R. Summers*, Uniform Commercial Code § 14-9, at 572-75 (2d ed. 1980). "Fraud in the

execution results in the agreement being void ab initio" *Sw. Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 774 (9th Cir. 1986).

## II. SECOND CAUSE OF ACTION
## UNCONSCIONABLE CONTRACT PER UCC§2-302

Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein. The Defendants changed the economic substance of the transaction from that contemplated in the application form, agreement, note(s) or other similar instrument(s) that the Plaintiffs executed, thereby changing the costs and risks to the Plaintiffs. At most, the Defendant extended its own credit (money of account), but the Plaintiffs were required to "repay" in money (money of exchange, and lawful money at that), which creates at least the inference of inequality of obligations on the two sides of the transaction (money, including lawful money, is to be exchanged for bank credit). Defendants undoubtedly asset that Plaintiffs signed a promise to pay, such as a note(s) or credit application (collectively, the "Note"), in exchange for the Defendants advance of funds, credit, or some type of money to or on behalf of Plaintiffs.

However, the bookkeeping entries required by application of GAAP and the Federal Reserve's own writings should trigger close scrutiny of Defendants apparent assertions that it lent its funds, credit, or money to or on behalf of Defendants, thereby causing them to owe Defendant $1,405,625.00 plus interest. According to the bookkeeping entries shown or otherwise described to me and application of GAAP, the Plaintiffs were to tender some form of "money" ("lawful money of the United States of America" is the type of money explicitly called for in the Note"), securities or other capital equivalent to money, funds, credit, or something else of value in exchange (money of exchange, loosely defined), collectively referred to herein as "money", to repay what the Plaintiff claims was the money lent to the Plaintiffs. To delve further with specificity and particularity, it is helpful to review a modern

Federal Reserve description of a bank's lending process. *See, David H. Friedman*, MONEY AND BANKING (5th ed. 2006):

> "The commercial bank lending process is similar to that of a thrift in that the receipt of cash from depositors increases both its assets and its deposit liabilities, which enables it to make additional loans and investments... [W]hen a commercial bank makes a loan, it accepts as an asset the borrower's debt obligation ( the promise to repay) and creates a liability on its books in the form of a demand deposit in the amount of the loan."

Therefore, the bank's original bookkeeping entry should show an increase in the amount of the asset credited on the asset side of its books and a corresponding increase equal to the value of the asset on the liability side of its books.   This would show that the bank received the customer's signed promise to repay as an asset, thus monetizing the customer's signature and creating on its books a liability in the form of a demand deposit or other demand liability as stated previously. The Defendant, in the normal course of business, holds this demand deposit in a transaction account on behalf of the Plaintiffs. Instead of the bank lending its money or other assets to the customer, as the Plaintiffs reasonably concluded from the wording from the face of the note, the Defendant created funds for the Plaintiffs transaction account without the Plaintiffs' permission, authorization, or knowledge and delivered the credit on its own books representing those funds to the Plaintiffs, meanwhile alleging that the Defendant lent the Plaintiffs money. *See, Thomas P. Fitch*, BARRON'S BUSINESS GUIDE DICTIONARY OF BANKING TERMS, "credit banking," 3.

> "Bookkeeping entry representing a deposit of funds into an account."

But Defendants loan agreement apparently avoids claiming that the bank actually lent the Plaintiffs money. Defendants state in the agreement that the Plaintiffs are obligated to repay Defendants principal and interest for the "Valuable consideration (money) the Defendants gave the Plaintiffs (borrower)." The loan agreement and note still delete any

reference to the Defendants receipt of actual cash value from the Plaintiffs and exchange of that receipt for actual cash value that the Defendants banker returned. The bookkeeping entries tend to prove that the Defendants accept cash, checks, drafts, and promissory notes/credit agreements (assets) as money deposited to create credit or checkbook money that are bank liabilities, which shows that, absent any right of set-off, Defendants owe money to the persons who deposit money. Cash (money of exchange) is money, and credit or promissory notes (money of account) become money when banks deposit promissory notes with the intent of treating them like deposits of cash. *See*, 12 U.S.C. § 1813 (I)(1) (definition of "deposit" under Federal Deposit Insurance Act).

When the Defendants enact the foregoing, then in that even, there is an utter failure of consideration for the "loan contract". The Defendants are trying to use the credit application form or the Note to persuade and deceive the Plaintiffs into believing that the opposite occurred and that the Plaintiffs were the borrower and not the lender. The following point is undisputed: The Plaintiffs' loan of their credit to Defendants, when issued and paid from their deposit or credit account at Defendants became money in the Federal Reserve System (subject to a reduction of up to ten percent for reserve requirements) as the newly issued credit was paid pursuant to written orders, including checks and wire transfers, to sellers of goods and services for the account of Plaintiffs. Based on the foregoing, Defendants are using the Plaintiffs note for its own purposes, and it remains to be proven whether Defendant has incurred any financial loss or actual damages. In any case, the inclusion of the "lawful money" language in the repayment clause of the note is confusing at best and in fact misleading in the context described above.

### III.    THIRD CAUSE OF ACTION

### IMPROPER ASSIGNMENT OF NOTE PER UCC § 7-501

### Against COUNTRY WIDE HOME LOAN and BANK OF NEW YORK MELLON

The assignment of the Persaud Deed of Trust is a conveyance of an instrument concerning real property which must be recorded to be acted upon. United States Code considers that anyone certifying that a real estate instrument has been assigned when in fact it has not is guilty of a felonious criminal act.

> *Title 18 USC Chapter 47 § 1021*
>
> *Whoever, being an officer or other person authorized by any law of the United States to record a conveyance of real property or any other instrument which by such law may be recorded, knowingly certifies falsely that such conveyance or instrument has or has not been recorded, shall be fined under this title or imprisoned not more than five years, or both.*

Plaintiff further states the facts that his Promissory Note dated July 19, 2005, regarding a loan for $1,405,625.00, the Original Lender of the July 19, 2005 Plaintiff (Persaud) loan is Country Wide Home Loan.

**The signed Note is indorsed by:**

a. Plaintiff further examined his mortgage dated July 19, 2005 and filed in the Official Records of the Orange County Comptroller's Office on August 02, 2005, as ins#20050508028 BK: 0811 PG: 4888.

CWALT, Inc., as Depositor for the Alternative Loan Trust 2005-37T1 not in its Individual Capacity but solely as Depositor for Alternative Loan Trust 2005-37T1 not named in any way to the Plaintiffs Mortgage. The Orange County Record shows an "Assignment of Mortgage", dated December 30, 2011 and filed in the Official Records of the Orange County Comptroller's Office on January 19, 2012 as ins#20120028327 Bk: 10320

Pg: 0119, signed by Cecilla Rodriguez as Assistant Secretary for Mortgage Electronic Registration Systems, Inc., and notarized December 30, 2011 by Darryl Brown, California Notary Commission #1812305, where Mortgage Electronic Registration Systems, Inc.. conveys, grants, bargains, sells, assigns transfers and sets over to The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificate holders of CWALT, Inc., Alternative Loan Trust 2005-37T1, Mortgage Pass-Through Certificates, Series 2005-37T1 that certain mortgage which encumbers that real property...Exhibit omitted.

Plaintiffs Assignment of Mortgage was recorded on January 19, 2012, which is seven (7) years **after** the Trust closed on or about July 28, 2005, with, allegedly, Plaintiffs Note and Mortgage already in the Trust. There is no sale of Plaintiffs Mortgage Loan caused through Plaintiffs Assignment of Mortgage.

## CHAIN OF TITLE "SECURITIZATION"

Securitization is the process of "aggregating" (i.e., commingling) the payments from a large number of mortgage loans into what is called a "mortgage pool" and then selling "shares" (called "certificates") to investors, who then receive "returns" over a specific time period. The "pool" of commingled mortgage payments is "sliced" into "tranches" from which many different "classes" of investments (with varying rates of "returns") are created and subsequently offered for sale by way of a "Prospectus."   Based on factual data, Plaintiff's mortgage payments ultimately flowed to and/or through the "pool" created by or on behalf of the Alternative Loan Trust 2005-37T1. However, it is impossible to determine the exact amounts from any mortgage payment paid out to any specific investor, as this was done after Plaintiffs payments were commingled with other monies.

HARRY PERSAUD'S ORIGINAL COMPLAINT

1
2

## MERS; MORTGAGE ELECTRONIC SYSTEM

3       After further research, plaintiff examined a copy of the MERS Procedures

4   Manual, Release 19.0, dated June 14, 2010, and MERS Residential Marketing Kit,

5   Terms And Conditions: (MERS Marketing Kit omitted).

6       a.  It is stated in the MERS Procedures Manual, Release 19.0, dated June 14,

7           2010: Page 63 – Transfer of Beneficial Rights to Member Investors,

8           Overview:

9           **"Although MERS tracks changes in ownership of the beneficial**

10          **rights for loans registered on the MERS System, MERS cannot**

11          **transfer the beneficial rights to the debt. The debt can only be**

12          **transferred by properly endorsing the promissory note to the**

13          **transferee."** (emphasis added)

14          It is stated in the MERS Residential Marketing Kit, Terms And Conditions:

15          2. ...MERS shall serve as mortgagee of record with respect to all such

16          mortgage loans solely as a nominee, in an administrative capacity, for the

17          beneficial owner or owners thereof from time to time. **MERS shall have**

18          **no rights whatsoever to any payments made on account of such**

19          **mortgage loans, to any servicing rights related to such mortgage**

20          **loans, or to any mortgaged properties securing such mortgage**

21          **loans. MERS agrees not to assert any rights** (other than rights

22          specified in the Governing Documents) with respect to such mortgage loans

23          or mortgaged properties. References herein to "mortgage(s)" and

24          "mortgagee of record" shall include deed(s) of trust and beneficiary under a

25          Mortgage and any other form of security instrument under applicable state

26          law. (emphasis added) **MERS and the Member agree that: (i) the**

27          **MERS System is not a vehicle for creating or transferring**

28

**beneficial interests in mortgage loans**... (emphasis added).

Upon further examination, there was no "true sale" of the Plaintiffs Mortgage Loan caused through the recorded Assignment of Mortgage. All available documents recorded in the Orange County records associated therewith, there is no evidence or indication that Alternative Loan Trust 2005-37T1 ever acquired ownership rights to the Plaintiffs loan, note, Mortgage, the debt purportedly 'evidenced' thereby, and/or the real property purportedly 'secured' thereby.

As a result the Alternative Loan Trust 2005-37T1 has never acquired rights to the Plaintiffs Note and Mortgage, those rights cannot be transferred to another party.

Historically an Assignment of the Mortgage without an assignment of the debt creates no right in the assignee. All the available evidence that I have examined lacks proof, or even a showing, of any proper transfer of the debt obligation (purportedly evidenced by the note) along with proper transfer of collateral rights in the real property (purportedly evidenced by the Mortgage) regardless of any verbiage inserted into the various assignments. In fact, there is no evidence that suggests the Plaintiffs note was properly transferred simultaneously with any purported transfer of the beneficial rights in the Plaintiffs Mortgage.

The transfer and sale of all Beneficial Interest of the Harry and Vera Persaud Mortgage to Alternative Loan Trust 2005-37Tl should have been done on or before the Closing Date of the Alternative Loan Trust 2005-37Tl which was July 28, 2005 (See Exhibits omitted).

## PRAYER AND RELIEF

**WHEREFORE**, the Plaintiffs respectfully request that the judgment be entered in their favor and against the Defendants as follows:

1. On Count I,

    a) Judgement against the Defendants,

    b) injunctive relief to restrain the Defendants from further unlawful conduct;

    c) an order requiring disgorgement of unlawful gains obtained by the Defendants as a result of their unlawful conduct;

    d) restitution or other remedial relief to compensate Plaintiffs of the Defendants' unlawful conduct;

    e) civil penalties;

    f) and costs of investigation.

2. On Count II,

    a) judgement against the Defendants, injunctive relief to restrain the Defendants from further unlawful conduct;

    b) an order requiring removal of cloud of title as a result of their unlawful conduct;

    c) restitution or other remedial relief to compensate Plaintiffs of the Defendants' unlawful conduct;

    d) civil penalties; and

    e) costs of investigation.

3. On Count III,

    a) Defendants return the GENUINE ORIGINAL PROMISSORY NOTE with a full disclosure of accounting of such to plaintiff forthwith;

    b) For damages as provided by statute;

    c) For a civil penalty and removal of cloud from Plaintiffs title,

    d) Such other relief as is in connection with each false entry or assignment, or such greater amount as provided by law;

1  e) Any other relief that Plaintiff fails to realize, and/or that this Chancery Court deems fair

2  and just under the circumstances.

3  4. On Count IV.

4  a) For an Order enjoining Defendants from continuing to violate the statues alleged

5  herein;

6  b) Declaring that the trust deed is not a lien against the subject property, ordering the

7  immediate release of the trust deed of record, and quieting the title to the subject

8  properties in Plaintiffs and against Defendants and all claiming by, though, or under them;

9  c) Injunctive relief to restrain the Defendants from further unlawful conduct;

10

11

12  DATED February _____, 2025                 Respectfully submitted,

13

14                                             By:_____

15                                                *Harry Persaud*
                                                  *5666 SW 59th Street*
16                                                 Ocala, Florida [34474]
                                                   Phone Number (407)-474-3800

17

18

19

20

21

22

23

24

25

26

27

28

HARRY PERSAUD'S ORIGINAL COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above **ORIGINAL** to the UNITED STATES DISTRICT COURT and **ONE COPY** delivered to BANK OF NEW YORK MELLON by certified mail return receipt requested this _____th day of February 2025.

Certified No._____ and its attorneys of record when applicable, to:

BANK OF NEW YORK MELLON
COUNSEL OF RECORD: Not available at present

240 Greenwich Street
New York, NY. 10286
Telephone: (212) 495-1784
Facsimile: N/A
Attn: Dermot McDonogh: Chief Financial Officer

Respectfully submitted,

By:_____
*Harry Persaud*
*5666 SW 59th Street*
Ocala, Florida [34474]
Phone Number (407)-474-3800

HARRY PERSAUD'S ORIGINAL COMPLAINT